IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**IMERYS TALC AMERICA, INC.,** *et al.*[1]<br><br>**Debtors.** | Chapter 11<br><br>Civ. Action No. _____<br><br>Bankr. Case No. 19-10289 (LSS)<br><br>Jointly Administered |

### DECLARATION OF JOHN H. DENTON

I, John H. Denton make this declaration under 28 U.S.C. § 1746 (the "Declaration"):

1. I am Director, Corporate Risk Management at Johnson & Johnson (the "Company").

2. I submit this Declaration in support of *Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b)*.

3. I am knowledgeable and familiar with the Company's insurance program, including the Company's historical commercial general liability ("CGL") policies. Except as otherwise indicated in this Declaration, the facts set forth herein are based upon my personal knowledge, my review of relevant documents, or information provided to me by employees of the Company or the Company's advisors.

4. I am aware of the claims asserted by plaintiffs (the "Talc Claims") against J&J and Debtors Imerys Talc America, Inc. ("ITA") and/or Imerys Talc Vermont, Inc. ("ITV")

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.


EXHIBIT B3

(collectively, "Imerys") alleging injury arising from the use of J&J's talc-based products, including Johnson's Baby Powder and Shower to Shower products (the "Talc Products").

5. I understand that many of these plaintiffs allege that they began using the Talc Products before 1986.

6. J&J maintained CGL insurance on an occurrence basis for several decades, beginning in the 1950s and continuing until 1986. It is J&J's position that these CGL policies provide coverage to J&J for the Talc Claims.

7. Accordingly, J&J has placed its occurrence-based CGL insurers on notice of the Talc Claims and seeks coverage from those insurers. Those occurrence-based CGL insurers are currently investigating the extent to which they will provide coverage for the Talc Claims.

8. The CGL policies contain language providing for coverage to certain affiliated or subsidiary companies as named insureds or insureds. For example, the primary products liability policy for the period January 1, 1973 to January 1, 1974 contains typical language providing that "an Insured [includes] the Named Insured, which shall read: Johnson & Johnson and any affiliated, associated or subsidiary company in any tier as now or hereafter may be formed, acquired or constituted or any other company over which Johnson & Johnson has or acquires active control or management, so long as Johnson & Johnson or such affiliated, associated or subsidiary company, or any combination thereof, owns in excess of 50% of the stock of such company." *See* Declaration of John J. Nolan, Esq. in Support of Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b) (the "Nolan Declaration"), Ex. 16.

9. From its formation in 1965 until J&J sold its interest therein, Windsor Minerals, Inc. ("Windsor") was a wholly-owned subsidiary of J&J.

10. On January 6, 1989, Cyprus Mines Corporation purchased all of the stock of Windsor from J&J pursuant to a stock purchase agreement (the "SPA").

11. The SPA sets out the terms of the sale of Windsor. The SPA specifically identifies in Exhibit L a "schedule listing all surety and other bonds to which Windsor [is] a party, or to which J&J is a party on behalf of Windsor . . ., and all policies of liability (excluding excess coverage policies) and workers' compensation insurance, from which coverage has been extended to Windsor . . . ." Nolan Declaration, Ex. 7 § 3.18

12. According to the Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), Windsor is now known as ITV, a Debtor. *See* Nolan Declaration, Ex. 1 ¶ 12.

13. I understand that the Debtors have claimed that many, if not all, of J&J's occurrence-based CGL policies—both primary and excess policies—provide coverage to Imerys for losses arising from the Talc Claims, not only the policies identified on Exhibit L to the SPA.

14. J&J sent to Imerys all of its 1965 through 1986 occurrence-based CGL policies in its possession, under a reservation of J&J's rights, in response to Imerys's request for those policies.

15. The Debtors First Day Declaration asserts that "[o]ne or more of the Debtors also have rights to the proceeds of insurance policies issued to J&J and its subsidiaries . . . ." Nolan Declaration, Ex. 1 ¶ 38.

16. I understand that Imerys has also tendered the Talc Claims to certain of J&J's insurers. For example, on February 2, 2016, Rio Tinto America, Inc. and various of its subsidiaries ("Rio Tinto") demanded coverage under the GCL Policies (the "Demand Letter"). *See* Nolan Declaration, Ex. 17. According to the Demand Letter, Debtor ITA is the successor to

Luzenac America, Inc. ("Luzenac") and Luzenac was a former subsidiary of Rio Tinto. *See* Nolan Declaration, Ex. 16 at 1. Further, according to the Demand Letter, Rio Tinto's position is that ITA (a Debtor) is the successor-in-interest to Windsor, by operation of law and assignment of rights in the SPA. *See* Nolan Declaration, Ex. 17 at 1.

17. On September 13, 2017, Travelers Casualty and Surety Company ("Travelers") responded to Rio Tinto's Demand Letter. *See* Nolan Declaration, Ex. 18. Travelers stated: "to the extent any entity potentially retained or currently potentially holds any rights as an additional insured under the J&J Policies, that entity would appear to be [Debtor ITV], and not [Debtor ITA] or Rio Tinto." Nolan Declaration, Ex. 18 at 3.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and after reasonable inquiry.

Dated: April 17, 2019
New Brunswick, New Jersey

John Denton
Director, Risk Management
Johnson & Johnson

4